**Robert FISCHER and Stella Fischer, Appellees,**

v.

**Joseph TROIANO and Sophia Troiano, Appellants.**

Superior Court of Pennsylvania.

Submitted Aug. 28, 2000.
Filed Feb. 5, 2001.

George E. Mehalchick, Scranton, for appellants.

Janine M. Torda, Scranton, for appellees.

Before DEL SOLE, ORIE MELVIN, and MONTEMURO *, JJ.

ORIE MELVIN, J.:

¶ 1 The Appellants, Joseph and Sophia Troiano, appeal from the Order of the Court of Common Pleas of Lackawanna County, granting a new trial limited to the issue of damages where the jury's damage award equaled the amount of medical expenses for Appellee, Stella Fischer, but did not provide an award for pain and suffering. We affirm.

¶ 2 The facts and procedural history may be summarized as follows. On April 23, 1994, Robert and Stella Fischer were guests at a bridal shower which took place at the Troianos' home. During the shower, both Robert and Stella Fischer fell when they missed a single step which led into the Troianos' sunken living room. The couple suffered injuries as a result of the fall. Specifically, Mr. Fischer injured his right elbow, and Mrs. Fischer suffered a compression fracture of the thoracic vertebrae at T–11.

¶ 3 On February 8, 1996, the Fischers instituted a civil action by filing a Complaint in the Court of Common Pleas of Lackawanna County against the Troianos sounding in negligence. The Troianos denied any liability for the fall and claimed the injuries suffered by the Fischers were a result of their own contributory negligence. The case was scheduled for a jury trial on April 5, 1999. On April 7, 1999, the jury returned a verdict by special interrogatories. The jury found the Troianos were negligent and their negligence was a substantial factor in causing the Fischers' injuries. Pursuant to the Comparative Negligence Act, the jury attributed 60% of the causal negligence to the Troianos and 40% of the causal negligence to the Fischers. The jury awarded Mrs. Fischer $24,588.73 for her medical expenses. However, no award was made for pain and suffering. The jury awarded Mr. Fischer $231.70 for his personal injuries

but assessed zero damages for his loss of consortium claim. By Order dated April 7, 1999, the award was molded to $14,753.24 for Mrs. Fischer and $139.02 for Mr. Fischer.

¶ 4 The Fischers subsequently filed a Motion for New Trial On Damages Only and contemporaneously filed a Petition for Delay Damages. In their motion for new trial, the Fischers claimed they were entitled to an award of non-economic damages since the evidence admitted at trial established they suffered injuries which were of the type that normally cause pain and suffering. The Troianos filed a response and alternatively argued that if a new trial was deemed warranted, it should not be limited to damages but granted as to all issues including liability. On January 12, 2000, the trial court entered an Order granting the Motion for New Trial On Damages Only as to Mrs. Fischer. Mr. Fischer's motion regarding non-economic damages and loss of consortium was denied. The Petition for Delay Damages as to Mrs. Fischer was deemed to be moot in light of the above Order but was granted as to Mr. Fischer. The Troianos' appeal followed.

¶ 5 The Troianos raise the following questions for our review:

A. Did the Trial Judge commit reversible error in finding sufficient grounds to grant Plaintiff, Stella Fischer's Motion for New Trial on Damages Only since such an order is contrary to applicable case law?

B. In the alternative, did the Trial Judge commit reversible error in granting Plaintiffs a new trial limiting the new trial to damages only since such an order is contrary to applicable case law?

Appellants' Brief at 4.

■■■■ ¶ 6 The Troianos first argue the trial court erred in granting Mrs. Fischer a new trial on the issue of damages. They

* Retired Justice assigned to Superior Court.

claim a new trial is not warranted since liability was contested and there was conflicting evidence presented regarding her injuries. The decision to grant a new trial on the grounds of inadequacy of damages is a matter within the trial court's discretion. *Davis v. Mullen,* 755 A.2d 693, 694. (Pa.Super.2000). We will not disturb the trial court's decision unless the court palpably abused its discretion or committed an error of law. *Mitchell v. Gravely Int'l,* 698 A.2d 618, 619 (Pa.Super.1997).

> ... As a general rule, a verdict in an action for a personal tort may be set aside as inadequate when, and only when, it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or that the jury disregarded the instruction of the court, or in some instances, where there was a vital misapprehension or mistake on the part of the jury, or where it clearly appears from the uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, or, according to some cases, where otherwise, there has been an evident failure of justice to the plaintiff, or where the award is so inadequate that it should not be permitted to stand. Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more.

*Beswick v. Maguire,* 748 A.2d 701, 702 (Pa.Super.2000) *(en banc )* (citing cases), *appeal denied,* —— Pa. ——, —— A.2d ——, 2000 WL 1421661, 2000 Pa. Lexis 2392 (Pa. September 26, 2000). A trial court may only grant a new trial when the jury's verdict is so contrary that it "shocks one's sense of justice." *Neison v. Hines,* 539 Pa. 516, 520, 653 A.2d 634, 636 (1995). A reversal based on the inadequacy of a verdict is appropriate only where injustice of the verdict stands forth like a beacon. *Peck v. Haberle,* 434 Pa.Super. 132, 642 A.2d 509, 511 (1994), *appeal denied,* 538 Pa. 673, 649 A.2d 674 (1994). However, a new trial should not be granted due to a mere conflict in testimony or because the trial judge, on the same facts, would have arrived at a different conclusion. *Mano v. Madden,* 738 A.2d 493, 495–496 (Pa.Super.1999)(*en banc* ).

¶ 7 We find the instant case is controlled by our holding in *Dougherty v. McLaughlin,* 432 Pa.Super. 129, 637 A.2d 1017 (1994). In *Dougherty,* the appellant was involved in an accident while a passenger in a vehicle driven by the appellee. Appellant presented uncontradicted medical evidence at trial of his two-day hospitalization and extensive injuries which included injuries to the face, neck and head resulting in permanent scarring and nerve damage. The jury returned a verdict in favor of appellant. *Dougherty,* 637 A.2d at 1018. The jury attributed 56% causal negligence to the appellee and 44% causal negligence to the appellant. The jury awarded damages in the exact amount of the appellant's unreimbursed medical costs. However, it made no award for pain and suffering. *Id.* On appeal, this Court found a new trial should be granted on the grounds of inadequacy of damages. The Court stated:

> Tort victims must be compensated for all that they lose and all that they suffer. Where a jury awards a plaintiff his medical expenses, they make a finding that the expenses were related to the defendant's actions in injuring the plaintiff. However, by not awarding any pain and suffering, the jury also makes a finding that the plaintiff did not suffer as a result of his injuries and subsequent surgery. Such findings are inherently inconsistent.

*Id.* at 1019 (citations omitted). The Court found the nature of the appellant's injuries indicated at least some pain and suffering. It concluded the failure to award damage for pain and suffering was clearly inconsistent with its award of medical expenses resulting in an inadequate verdict. *Id.* *See also, Davis, supra,* (holding trial court erred in denying appellant's motion for new trial when jury's limited award of

medical costs and damage to personal property improperly indicated the appellant did not suffer from his claimed injuries); *Burnhauser v. Bumberger*, 745 A.2d 1256 (Pa.Super.2000) (holding trial court properly granted new trial on the issue of damages when the appellee suffered injuries of the type that normally involve pain and suffering and the jury awarded damages limited to the amount of her unreimbursed medical expenses); *Neison, supra*, (holding trial court properly granted new trial when evidence established appellant suffered painful injuries as a result of accident and jury's decision to award no damages for pain and suffering did not bear a reasonable relationship to the evidence produced at trial).

¶ 8 In the present case, Mrs. Fischer fell at the Troianos' home. The day after the fall, she was treated at Wayne Memorial Hospital Emergency Department complaining of an injury to the chest and back pain. X-rays were taken and pain medicine was prescribed. Three days later, she returned to the hospital, as she was having trouble breathing and complained of pain on the left side of her chest. Additional x-rays were taken which revealed a compression fracture of the T–11 vertebrae. Mrs. Fischer was admitted to the hospital and an epidural drip with the narcotic drug Fentanyl was inserted for seven days for pain control.

¶ 9 Although Mrs. Fischer suffered from various pre-existing conditions, the medical experts for **both** parties agreed Mrs. Fischer suffered a compression fracture of the T–11 vertebrae as a result of the fall. *See* Dp. Tr. James J. McGraw, Jr., M.D., 10/2/98, at 12–14; Dp. Tr. Albert M. Murtland, M.D., 9/17/98, at 17; Dp. Tr., Jeffrey A. Mogerman, M.D, 9/23/98, at 25, 36.[1] Specifically, Dr. McGraw, Mrs. Fischer's family physician, testified an x-ray and bone scan performed revealed the fracture.

Dr. Murtland also testified regarding Mrs. Fischer's complaints of back pain and opined her condition would gradually get worse due to her pre-existing medical condition.[2] *Id.* at 15–19. He also testified that the objective finding of the bone fracture substantiated Mrs. Fischer's subjective complaints of pain. *Id.* at 37.

¶ 10 Dr. Murtland, an orthopedic surgeon, began treating Mrs. Fischer on August 28, 1994. Dp. Tr. Albert M. Murtland, M.D., 9/17/98, at 8. He confirmed the fracture at T–11 and attributed it to the fall. *Id.* at 15–17. Although he agreed the fracture had healed by August of 1995, he testified that due to Mrs. Fischer's degenerative changes and the flare-up that the injury caused to her degenerative changes, she would never be completely well. *Id.* at 20.

¶ 11 The Troianos' medical expert, Dr. Mogerman, an orthopedic surgeon, only differed in opinion about the extent and severity of the injury. He testified Mrs. Fischer's fracture had healed at the time of his independent medical examination on July 22, 1998. *See* Dp. Tr., Jeffrey A. Mogerman, M.D., 9/23/98 at 26. However, he acknowledged Mrs. Fischer was required to be hospitalized after the accident and commented that patients who suffer this type of injury require hospitalization due to pain. *Id.* at 38. He also opined Mrs. Fischers' injury would require a three to five month healing period. *Id.* at 26–27.

¶ 12 Although liability was contested in this case, it is undisputed Mrs. Fischer suffered a compression fracture to the T 11 vertebrae. Clearly a broken bone is the type of injury which human experience teaches us is accompanied by pain. *Boggavarapu v. Ponist*, 518 Pa. 162, 167, 542 A.2d 516, 518 (1988). The record reflects the nature of Mrs. Fischer's injury indi-

---

1. The deposition testimony of Drs. Murtland and Mogerman was introduced via videotape at trial while Dr. McGraw's deposition transcript was read into the record.

2. Mrs. Fischer's pre-existing conditions included diabetes, sleep apnea, hypertension, hypothyroidism, anxiety, degenerative disc disease, pulmonary problems, and obesity.

cates at least some pain and suffering. *See Dougherty, supra.* It clearly appears from the uncontradicted medical evidence that the amount of the verdict bears no reasonable relation to the loss suffered by Mrs. Fischer as it only accounted for her medical expenses. Therefore, we find the jury's determination that Mrs. Fischer did not suffer as a result of her injury is inherently inconsistent. Accordingly, the trial court properly granted Mrs. Fischer's Motion For New Trial On Damages Only.

■ ¶ 13 The Troianos also claim the award, limited to Mrs. Fischer's medical expenses, indicates the jury reached a compromise verdict which should not be disturbed. "A compromise verdict is one where the jury, in doubt as to the defendant's negligence or plaintiff's contributory negligence, returns a verdict for the plaintiff but in a lesser amount than it would have if these questions had been free from doubt." *Kiser v. Schulte,* 538 Pa. 219, 233, 648 A.2d 1, 8 (1994). In support of their argument the jury reached a compromise verdict in this case, the Troianos rely on *Dawson v. Fowler,* 384 Pa.Super. 329, 558 A.2d 565 (1989), *appeal denied,* 523 Pa. 636, 565 A.2d 445 (1989), and *Carlson v. Bubash,* 432 Pa.Super. 514, 639 A.2d 458 (1994), *appeal denied,* 540 Pa. 592, 655 A.2d 982 (1995).

¶ 14 In *Dawson,* the appellant, while driving his motorcycle at an excessive rate of speed, collided with the appellee's vehicle as she was backing out of a driveway. The jury found both parties 50% causally negligent and awarded damages to the appellant in an amount equal to his medical expenses. However, the jury made no award for pain and suffering or lost wages. *Dawson,* 558 A.2d at 566. On appeal, the appellant claimed the trial court erred in denying the motion for new trial because the jury impermissibly reached a compromise verdict. *Id.* In affirming the Order, the *Dawson* Court held that since liability was contested, and the jury was presented with inconsistent evidence regarding the degree of the appellant's injury and the resultant pain and suffering, a compromised verdict was properly reached by the jury. *Id.* at 567. Accordingly, it found granting a new trial on the issue of damages would be an abuse of discretion. *Id.*

¶ 15 In *Carlson,* the appellant was injured during a confrontation with the appellee. The confrontation took place outside the apartment complex of the appellant's former girlfriend. At trial, there was a factual dispute as to how the appellant's injuries occurred. The facts revealed the appellant had either leaned or jumped into the passenger's side window of the appellee's car or was pulled into the open window before he became entangled and fell from the vehicle as it was moving. *Carlson,* 639 A.2d at 459. The appellant suffered multiple injuries as a result of the accident. *Id.* A jury found the appellee 55% causally negligent and the appellant 45% causally negligent. The trial court molded the jury's award of $7,500 to reflect the assignment of causation. *Id.* On appeal, the appellant contended he was entitled to a new trial because the trial court erred in characterizing the jury's award as a compromise verdict. *Id.* In affirming the Order denying the motion for a new trial, the Court relied on *Dawson.* It found compromise verdicts are permissible notwithstanding a finding of comparative negligence, when liability is contested and conflicting testimony is presented. *Id.* at 460. The *Carlson* Court found liability was specifically contested on the issue of causation. It found that "in a case such as this where the plaintiff's conduct was at least adventuresome, if not overtly confrontational, we would find it altogether appropriate and reasonable for a jury to exercise its power of compromise on the amount of the verdict as well as the comparative negligence determination." *Id.* at 461.

■ ¶ 16 We find *Dawson* and *Carlson* are distinguishable from the present case. We do not find the jury reached a compromise verdict here, but instead ig-

nored the medical evidence presented which supported Mrs. Fischer suffered from an objective injury which produced a compensable pain from a known medical source. *See Hawley v. Donahoo,* 416 Pa.Super. 469, 611 A.2d 311 (1992) (holding fracture of L–3 vertebra as a result of a motor vehicle accident represented a compensable pain from a known medical source which was more than a transient rub of life). There is no dispute here that Mrs. Fischer suffered a compression fracture of the T–11 vertebrae as a result of the fall. There is also no dispute she was hospitalized as a result of her injury and the healing process would require at least a three-month healing period. We further find the jury disregarded the trial court's instruction requiring them to compensate Mrs. Fischer for her pain and suffering, loss of enjoyment of life and humiliation if they found the Troianos liable. *See* N.T., 4/7/99 at 73–77. Therefore, in situations such as this, when a jury awards damages for medical expenses, it must also award some damages for pain and suffering which would naturally accompany the injury.

¶ 17 In the alternative, the Troianos argue the trial court erred in granting a new trial solely on the issue of damages. A new trial limited to the issue of damages will be granted where: (1) the issue of damages is not "intertwined" with the issue of liability; and (2) where the issue of liability has been "fairly determined" or is "free from doubt." *Mano,* 738 A.2d at 498. Upon our review, we find both requirements have been met. Although liability was contested, the jury clearly apportioned liability finding the Troianos 60% causally negligent and the Fischers 40% causally negligent. Since both parties were given a fair opportunity to litigate the issue of liability at trial, we find liability has been conclusively determined and need not be re-litigated. *Id.* However, we acknowledge that evidence regarding the manner of the accident is relevant to the determination of the award of damages upon retrial. Therefore, evidence concerning the nature and severity of the accident may be introduced at trial as deemed relevant to the issue of damages. *Id.*

¶ 18 Order affirmed.